UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| Ivan L. Jeffery, | : | Case No.  16-15037 (PMM) |
| | : | |
| Debtor. | : | |

**O P I N I O N**

**I.  INTRODUCTION**

Before this court is the first and final fee application for compensation and reimbursement of expenses of Duane Morris LLP, as counsel for the Chapter 7 trustee, for the period from August 15, 2016 through June 30, 2023 filed on July 7, 2023. Duane Morris's fee application seeks allowance of compensation in the amount of $220,000.00 and reimbursement of expenses of $11,267.36. Creditor-Artesanias Hacienda Real S.A. de C.V. objects to the fee application. For the reasons set forth below, after a reduction of compensation in the amount of $3,223.50, the Application will be approved in the amount of $216,776.50 in compensation and $11,267.36 as reimbursement for expenses.

**II. JURISDICTION AND VENUE**

Venue in this District and Court is proper pursuant to 28 U.S.C. §§1408 and 1409. Jurisdiction over this matter is proper pursuant to 28 U.S.C. §1334(b). This is a core proceeding under 28 U.S.C. §157(b)(2)(A).

### III. PROCEDURAL AND FACTUAL BACKGROUND

Debtor Ivan L. Jeffery (the "Debtor") filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 15, 2016. On July 18, 2016, Lynn E. Feldman was appointed as the Chapter 7 trustee (the "Trustee"). The Trustee later determined that this was an asset case.

Shortly thereafter, the Trustee filed an application to retain the services of Duane Morris LLP ("Duane Morris"), *nunc pro tunc* to August 15, 2016, as counsel to the Trustee. At the time of the Trustee's application, Duane Morris charged $375.00 to $715.00 per hour for its services. No parties filed an objection to the Trustee's retention of Duane Morris as counsel. This Court later approved the Trustee's application, finding that Duane Morris's retention was in the best interest of the estate and its creditors pursuant to 11 U.S.C. §327(a).

The Debtor was formerly the principal of the entity Wilton Armetale, Inc. a/k/a WAPITA, Inc. ("Wilton"), which produced and sold household tableware to large suppliers. On September 9, 2016, Wilton filed a separate voluntary petition for Chapter 7 relief. See Bankr. Case No. 16-16779. Following the Debtor and Wilton's separate filings, two (2) creditors filed proofs of claims against both Debtor and Wilton's Estates: North Mill Capital, LLC ("North Mill") and Artesanias Hacienda Real S.A. de C.V. ("AHR"). The third creditor relevant to this decision, LEPCO, filed a claim only against the Debtor.

For nearly seven (7) years, on behalf of the Trustee, Duane Morris pursued and settled claims against and with parties-at-interest to both Debtor and Wilton's Estates. As a result, Duane Morris maintained overlapping responsibilities between the two (2) cases that are not common to "routine" Chapter 7 filings in this District.[1] On July 7, 2023, the Applicant filed its first and final

---

[1] This Court understands that every case and client will present unique challenges to a Chapter 7 trustee's counsel and hesitates to call any filing "routine." However, based upon this Court's thorough review of the docket and Duane Morris's billing entries, the Debtor's case presented all parties with issues different from most Chapter 7 cases.

fee application (the "Application"), and now seeks an allowance of compensation in the amount of $220,000.00 and reimbursement of expenses of $11,267.36. The Application shows that Duane Morris billed 395.50 hours at rates ranging from $305.00 to $1,045.00 per hour for its services rendered between August 15, 2016 through June 30, 2023.

On July 28, 2023, AHR filed an objection to the Application (the "Objection") by which AHR requested the reduction of Duane Morris's fees to one-third of net proceeds recovered for the Debtor's Estate. Duane Morris timely filed a response on August 17, 2023. An evidentiary hearing on Duane Morris's Application and AHR's Objection was held on August 22, 2023.

### IV. THE PARTIES' ARGUMENTS

AHR forwards six (6) arguments to support its contention that this Court should disallow a portion of Duane Morris's professional compensation.

First, AHR asserts that the withdrawal of North Mill's claim against the Debtor's Estate (the "North Mill Settlement") was the result of negotiations between AHR, the Chapter 7 Trustee in the Wilton case ("the Wilton Trustee"), and North Mill; August 22, 2023 Hearing Transcript at 19-21 [Doc. # 245] ("Aug. 22 Transcript"). In other words, AHR contends that Duane Morris served no role in devising the Wilton Settlement; Aug. 22 Transcript at 19-21. Duane Morris responds that AHR fails to distinguish between North Mill's settlement in the Debtor's case and North Mill's settlement in the Wilton case. Aug. 22 Transcript at 9. Duane Morris argues that its services rendered in connection to the North Mill Settlement were a separate, additional concession that only related to the Debtor's case and a product of Duane Morris's own efforts. Aug. 22 Transcript at 9.

Second, AHR argues that Duane Morris seeks compensation for services that should have been rendered instead by the Trustee. Aug. 22 Transcript at 21-24. To support this argument,

3

AHR submits that Duane Morris's involvement in the sale of Debtor's real property and Mercedes-Benz was an "ordinary service" which the Trustee had a statutory obligation to pursue. Aug. 22 Transcript at 21-24. Yet AHR does not advance what portion—if any—of Duane Morris's professional services were those that were vested to the Trustee under 11 U.S.C. §704. Instead, AHR provides a blanket assertion that services relating to this sale of the Debtor's real property and Mercedes-Benz in this case should have been rendered by the Trustee. Duane Morris responds that the sale of the real property and Mercedes-Benz were not typical sales in a Chapter 7 case. Aug. 22 Transcript at 10-12. Duane Morris contends that prior to the Debtor's filing, the Debtor leased the Debtor's real property and Mercedes-Benz to two third-party lessees (the "Third-Party Lessees"). Aug. 22 Transcript at 10-12. Duane Morris argues after the Debtor's filing, the Third-Party Lessees refused to surrender possession of the Debtor's real property and Mercedes-Benz to the Trustee—thwarting the prospect of its sales. Aug. 22 Transcript at 10-12. As a result, the Third-Party Lessees continuing use of the Debtor's properties required Duane Morris to expend significant time and resources in ensuring the Trustee's collection and disposition of the properties. Aug. 22 Transcript at 10-11.

Third, AHR argues Duane Morris charged fees for "unreasonable and unnecessary services" in its assertion of claims against the Wilton Estate. Aug. 22 Transcript 22-23. AHR argues the Duane Morris billed $29,000.00 for its actions taken against the Wilton Estate and that those actions recovered $5,000.00 for the Estate.[2] Aug. 22 Transcript 22-23. AHR further submits Duane Morris's professional services were unreasonable and unnecessary because the Wilton Estate's only assets were its real property and a potential malpractice claim against Wilton's former

---

[2] As to how much Duane Morris's actions recovered for the estate, AHR's testimony is contradictory: in its Objection, AHR argues Duane Morris's efforts yielded $5,000.00 while at the hearing AHR argues Duane Morris efforts yielded a $23,000.000 recovery. Compare Doc. # 234, with Aug. 22 Transcript at 23.

4

counsel and, as a result, recovery against the Wilton Estate was limited from the outset. Aug. 22 Transcript 22-23. Duane Morris filed two proofs of claim against the Wilton Estate (the "Wilton Claims") and later settled objections the Wilton Claims with the Wilton Trustee (the "Wilton Settlement"). Aug. 22 Transcript at 13; see also Case No. 16-16779, Claim Nos. 10-1, 11-1, Doc. # 113. Duane Morris contends fees incurred in connection with the Wilton Settlement were appropriate and necessary because they led to the eventual and continued disbursement of funds towards both AHR and the Debtor's Estate. Aug. 22 Transcript at 13.

Fourth, AHR argues Duane Morris's services rendered following the closing of the last preference action in 2019 were neither reasonable nor necessary. AHR contends Duane Morris's services rendered between 2019 to 2023 resulted in unreasonable and unnecessary fees for the estate. Doc. # 234. AHR does not state in its Objection *why* those services were unreasonable and unnecessary. Duane Morris argues its preference actions recovered $358,535.22 for the estate and much of which will ultimately be disbursed to AHR. In support of its argument, Duane Morris provided this Court with time sheets reflecting its preparation, negotiations, and settlement of those preference actions. See Doc. # 230, Ex. A. Duane Morris further argues AHR itself increased Duane Morris's fees because AHR opposed numerous matters in the Debtor's case, the adversary proceedings, and in the Wilton Case. Doc. # 240, Ex. C; Aug. 22 Transcript at 17.

Fifth, AHR argues Duane Morris's fees far exceed the prevailing market rate in this District and that Duane Morris charged excessive rates for a "relatively simple" case. Doc. # 234; Aug. 22 Transcript at 24-27. That is, according to the objector, the administration of this case did not require a high degree of experience or skill. Doc. # 234. AHR submits rates of local counsel—none of whom have acted as counsel to a Chapter 7 Trustee in this District. Doc. # 234; Aug. 22 Transcript at 25. AHR further argues this Court limits a Chapter 7 Trustee's attorney's professional

5

fees to one-third of net recoveries. Aug. 22 Transcript at 27. Duane Morris points out that its junior counsel, with lower rates, rendered services when possible. Aug. 22 Transcript at 17. Duane Morris further submits that the majority of its services were rendered before its hourly rate reached $1,045.00 per hour. Aug. 22 Transcript at 17. Duane Morris also argues a flat fee for counsel's services are in direct contrast to 11 U.S.C. §330(a)(3)(E), which directs the court to look at the skills and experience of the Chapter 7 trustee's professional.

The UST raised two (2) points to AHR's fifth argument: (1) this court has never followed a one-third net recovery rule; and (2) while Duane Morris charges a higher rate than most local attorneys, this District has no local rule capping an attorney's hourly rate. Aug. 22 Transcript at 37-38.

Lastly, AHR asserts that Duane Morris improperly charged $6,447.00 for the preparation of its Application. Duane Morris billed the estate at the rates of $1,045.00 and $465.00 per hour for the preparation of its Application. AHR argues that such fees provide no benefit to the estate and are inflated, particularly given that the nature of this work. Aug. 22 Transcript at 22. Duane Morris counters that professionals are entitled to recover fees for the preparation of their fee applications. Duane Morris further that it billed 4.50 hours, at its lowest possible attorney rate of $325.00 per hour, for the preparation of its Application. Doc. # 240; Aug. 22 Transcript at 15. Duane Morris submits it thereafter billed 3.50 hours, at a rate of $1,095.00 per hour, for the review of its junior counsel's work product and for the subsequent reduction of certain billing entries in its Application.[3] Doc. # 240.

---

[3] Duane Morris submits at the hearing it reduced fees in the amount of $65,237.50 from its review of the Application. Aug. 22 Transcript at 16.

6

## V. RELEVANT BACKGROUND LAW

This Court has and will continue to review *all* fee applications before it—regardless of whether an objection was filed. In re Busy Beaver Bldg. Centers, Inc., 19 F.3d 833, 841 (3d Cir. 1994) ("[T]he bankruptcy court has a *duty* to review fee applications.") (emphasis in original); In re Yovtcheva, 590 B.R. 307, 314 (Bankr. E.D. Pa. 2018).

### A. 11 U.S.C. §327(a)

Under Bankruptcy Code §327(a), "the trustee, with the court's approval, may employ one or more attorneys . . . that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the trustee's duties under [the Bankruptcy Code]." 11 U.S.C. §327(a). The role of this Court is not to "blindly" approve a trustee's request, rather, this Court must first ask whether "the attorney's special professional skills are necessary for the protection and benefit of the estate or for the furtherance of the aims of the case." In re Rheam of Indiana, Inc., 111 B.R. 87, 100 (Bankr. E.D. Pa. 1990), aff'd in part, vacated in part, 133 B.R. 325 (E.D. Pa. 1991).

### B. 11 U.S.C. §330

Under §330 of the Bankruptcy Code, this Court has the power to award a professional person "reasonable compensation for actual, necessary services rendered" and provide "reimbursement for actual, necessary expenses." 11 U.S.C. §330(a)(1). This Court need not award all the compensation that is requested in a professional's fee application. 11 U.S.C. §330(a)(2). Accordingly, the fee applicant has the burden of proving their services are compensable. Woods v. City Nat. Bank & Trust Co. of Chicago, 312 U.S. 262, 268, 61 S. Ct. 493, 85 L. Ed. 820 (1941) (Decided under Chapter X of the Chandler Act); Zolfo, Cooper & Co. v. Sunbeam-Oster Co., 50

F.3d 253, 261 (3d Cir. 1995) (citing In re Metro Transp. Co., 107 B.R. 50, 53 (E.D. Pa. 1989)); In re Murray, 2007 WL 2317523, at *2 (Bankr. E.D. Pa. Aug. 6, 2007).

In determining an award of "reasonable compensation" this Court must "consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—"

> (A) the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial **at the time at which the service was rendered** toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. §330(a)(3)(emphasis added).

The Third Circuit further instructs courts to utilize the "lodestar" method before awarding reasonable fees. Busy Beaver, 19 F.3d at 849, 856. Its application requires courts to multiply a reasonable hourly rate of an attorney's compensable services by the number of hours spent on such services. Id. at 849 n.21; In re Smith, 331 B.R. 622, 628 (Bankr. M.D. Pa. 2005) (citing Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)). Under the lodestar method, not all services are billable and administrative tasks should be billed at an appropriate rate. Busy Beaver, 19 F.3d at 855; In

re Strauss, 2023 Bankr. LEXIS 841, at *14 (Bankr. M.D. Pa. Mar. 31, 2023) (citing In re Szymczak, 246 B.R. 774, 782 (Bankr. D. N.J. 2000)).

Compensation will not be awarded to a trustee's professional where the services were (1) an unnecessary duplication or (2) not "reasonably likely to benefit the debtor's estate or necessary to the administration of the estate." 11 U.S.C. §330(a)(4). Section 330(a)(4)(A) does not require a trustee or their professional show their services provided an actual benefit to the estate. In re Top Grade Sausage, Inc., 227 F.3d 123, 132 (3d Cir. 2000). Instead, they must show their services were "*reasonably likely to benefit the debtor's estate*" at the time they were rendered. Id. (emphasis added); see also In re Hosp. Partners of Am., Inc., 597 B.R. 763, 767 (Bankr. Del. 2019) ("As a practical matter, bankruptcy professionals are not guarantors of the success of a particular theory, proceeding, or strategy."); In re Grasso, 586 B.R. 110, 144 (Bankr. E.D. Pa. 2018) (Section 330(a) "must be applied without the benefit of hindsight.") (citing Top Grade).

In setting this standard, the Third Circuit further instructs Bankruptcy Courts need not "become enmeshed in a meticulous analysis of every detailed facet of the professional representation." Busy Beaver, 19 F.3d at 845 (quoting Lindy Bros. Builders, Inc. v. Am. Radiator & Std. Sanitary Corp., 540 F.2d 102, 116 (3d Cir. 1976)). The role of this Court is not to calculate a professional's compensation to an unblemished exactitude. Rather, this Court's primary responsibility is to review, prevent, and correct "*reasonably discernable* abuses" in a professional's fee application. Id. (emphasis added).

## VI. DISCUSSION

A brief review of the docket and related matters in the Wilton case leads to a simple conclusion: this was not a typical Chapter 7 case in which a few assets were sold and preference actions were administered by the trustee's counsel. Instead, Duane Morris devoted significant

9

time and resources towards competing interests across parallel, but separate, cases. The complexities of those related issues between obtaining both the North Mill and Wilton Settlements, the added difficulties selling the Debtor's real property and Mercedes-Benz, and AHR's persistent objections throughout the life of the Debtor's case required more time and effort on the part of the Trustee and Duane Morris. Based on the forgoing facts, this Court finds Duane Morris's services on behalf of the Trustee were reasonable and necessary to the administration of the Debtor's case. However, as discussed below, billing the Debtor's Estate $1,045.00 per hour in reviewing one's own fee application is neither reasonable nor necessary as it is administrative—not legal—work.

### A. The North Mill Settlement

Duane Morris and AHR quarrel over the circumstances resulting in the North Mill Settlement. See Docs. # 230, 234, 240; Aug. 22 Transcript. However, this Court's concern only lies with the services Duane Morris rendered for the Trustee towards the initial settlement in the Wilton case and the alternative North Mill Settlement in the Debtor's case. Duane Morris's billed 7.50 hours for its efforts in obtaining the North Mill Settlement. Docs. # 230, Ex. A., 240, Ex. B.

The relevant billing entries state that Duane Morris: (1) reviewed filings and documents before this Court and the Wilton Court (1.10 hours); (2) communicated with counsel for North Mill, AHR, the Trustee, and the Wilton Trustee (4.30 hours); and (3) participated at a hearing before the Wilton court (2.20 hours). See Docs. # 230, Ex. A., 240, Ex. B. Duane Morris conceded that the withdrawal of North Mill's claim was significant. See Aug. 22 Transcript at 9-11. Duane Morris's focus remained on its efforts to reach a resolution in the Debtor's estate despite its additional involvement in the Wilton Case. See Aug. 22 Transcript at 9-11. It is clear that Duane Morris pursued the North Mill settlement for the benefit of the Debtor's Estate and did so successfully. But see In re Xebec, 147 B.R. 518 (B.A.P. 9th Cir. 1992) ("the benefit analysis does

10

not require that the services rendered by the [trustee]'s attorney be successful in every circumstance.").

This Court maintains broad discretion to "determine the number of hours reasonably expended." Macke Int'l Trade, Inc., 370 B.R. 236, 254 (9th Cir. B.A.P. 2007). Few counsel for a Chapter 7 trustee are thrust into the balancing act that occurred here. Different parties-at-interest to North Mill's claim had competing visions and incentives for the sale proceeds of the Wilton Property. Given the importance of North Mill's claim to a multitude of parties, Duane Morris's services in connection to the North Mill Settlement were essential to the furtherance of both its client's position and the Debtor's case. Expending 7.50 hours in pursuit of those services were reasonable and necessary for the administration of the Debtor's Estate.

### B. The Sale of the Debtor's Real Property & Mercedes-Benz

The sale of the Debtor's real property and Mercedes-Benz required skill and expertise beyond that expected of ordinary counsel to the Chapter 7 trustee. In most circumstances, the trustee's counsel need not be involved in duties statutorily delegated to the trustee. One of those duties includes "collect[ing] and reduc[ing] to money the property of the estate." 11 U.S.C. §704(a)(1). However, where unique circumstances exist, and the resolution of those circumstances requires legal expertise, counsel's obligations which overlap with the trustee may be compensable. In re J.W. Knapp Co., 930 F.2d 386, 388 (4th Cir. 1991). The fee applicant will still carry the burden of proving their services are reasonable and necessary. Zolfo, Cooper & Co., 50 F.3d at 261 (citing Metro Transp. Co., 107 B.R. at 53).

This Court finds the Third-Party Lessees' efforts to thwart the Estate's collection and sale of the real property and Mercedes-Benz necessitated Duane Morris's involvement. Duane Morris adequately demonstrated the need for its joinder motion and communications with counsel

11

to the Third-Party Lessees,[4] see Doc. # 67, both of which are compensable as reasonable and necessary services under 11 U.S.C. §330(a). The sale of the Debtor's real property and Mercedes-Benz yielded a $105,985.37 recovery for the estate. Doc. # 230.

AHR fails to explain *why* Duane Morris efforts in collecting and disposing of the Debtor's real property and Mercedes-Benz were an "ordinary service" for the Trustee. In its Objection, AHR argues this Court cannot award fees for Duane Morris's services that should have been rendered by the Trustee under 11 U.S.C. §704(a). Doc. # 234. Relying on In re Yovtcheva, AHR attempts to show that courts in this District will not award fees to a trustee's counsel for duplicative services like asset collection. 590 B.R. at 313.

But AHR makes no real attempt to apply Yovtcheva to the facts here. This is not surprising, given that Yovtcheva is a markedly simpler case than the Debtor's. In Yovtcheva, the Debtor maintained a single asset. Id. at 309. The court refused to award fees for counsel's administrative efforts in collecting proceeds to a life insurance policy, finding those tasks should have been rendered by either a paralegal or the trustee. In re Yovtcheva, 590 B.R. 307, 315 (Bankr. E.D. Pa. 2018). Unlike Yovtcheva, Duane Morris's efforts to collect and sell the Debtor's assets required significant resources and legal expertise the ordinary Chapter 7 trustee would not possess.

**C. The Wilton Settlement**

Like other issues presented in this Application, the Debtor's pursuit of the Wilton Claims against the Wilton Estate presented an extra-layer of complexity not normally present in a Chapter 7 case. AHR expresses a general dissatisfaction with the pursuit of the Wilton Claims because the

---

[4] The Debtor and his spouse moved to hold the Third-Party Lessees in violation of the automatic stay and sought an order relinquishing the Property to the Estate. Doc. # 60. On October 17, 2016, Duane Morris joined the Debtor's motion and requested damages be awarded to the Estate. Doc. # 67.

12

Wilton Estate maintained few assets at the outset and expended significant funds for a limited recovery.

However, the pursuit of Wilton Claims were reasonably likely to benefit the Debtor's Estate and did in fact materially do so. Upon Duane Morris filing the proofs of claims, if allowed, the Debtor's Estate was positioned to become the largest unsecured creditor in the Wilton case. When Duane Morris and the Wilton Trustee ultimately reached a settlement regarding those claims, both the Debtor's Estate and AHR sought to benefit.[5] See Bankr Case No. 16-16779, Doc. # 113.

From the time the Wilton Claims were filed to the date of their settlement, AHR similarly remained the Debtor's largest creditor. The Wilton Settlement was a reasonable alternative towards the satisfaction of AHR's claim. Based on the billing summary in the Application, under the applicable sections of the Bankruptcy Code, this Court finds fees incurred from Duane Morris's efforts in connection to the Wilton Settlement were reasonable and necessary.

### D. Preference Actions Against the Debtor and His Trade Creditors

Duane Morris's pursuit of various preference actions was necessary to the administration of the Debtor's case and "reasonably likely to benefit the debtor's estate" at the time they were rendered. Top Grade Sausage, 227 F.3d at 132. Shortly after its retention, Duane Morris initiated discussions with the Trustee regarding potential fraudulent transfers between the Debtor and third-parties. See Doc # 230, Ex. A. From 2017 to 2019, Duane Morris engaged in constant communication with the Trustee, the Debtor's counsel, and defendants' counsel regarding the status of those actions. Doc. # 230, Ex. A. This Court will not rely on the benefit of hindsight to

---

[5] The Wilton Settlement allowed the Wilton Claims as general unsecured claims against the Wilton Estate. See Bankr Case No. 16-16779, Doc. # 113. Under the Settlement, AHR would receive 75% and Trustee would receive 25% of any distributions made to Wilton claim number 10-1. Id.

assess whether the success, or possible lack thereof, renders the services in furtherance of a preference action compensable or not. See Grasso, 586 B.R. at 144; see also Hosp. Partners of Am., 597 B.R. at 769 (finding the pursuit of preference actions are not per se incompensable because the total recovery are less than the amount counsel billed). At the time each preference action was commenced, Duane Morris and the Trustee could reasonably believe that their success would recover significant funds for the benefit of the Debtor's estate.

AHR also objects to the work completed by Duane Morris after the final preference action was closed. See Doc. # 234, Ex. 5. AHR argues that no services billed after the close of the final preference action were reasonable or necessary. However, a final resolution in an adversary proceeding does not foreclose a professional from recovering for continued, necessary services in relation to that proceeding. AHR points to a fee schedule of the unnecessary services rendered by Duane Morris between 2019 to 2023. Doc. # 234, Ex. 5. Of the fees listed on that schedule, Duane Morris billed $954.00 for its professional services. Doc. # 234, Ex. 5. None of the time entries exceed three tenths of an hour. Doc. # 234, Ex. 5. Further, the contested entries are for services such as reviewing an order entered by this Court or discussing substantive matters related to the administration of this case with the Trustee and the Debtor's counsel. Doc. # 234, Ex. 5. This Court need not determine whether such services are for the benefit of the estate under 11 U.S.C. §330(a). After reviewing the specific time entries AHR disputes, this Court finds Duane Morris spent reasonable time on those matters and charged a reasonable rate.

### E. Duane Morris's Fees & Rates

As stated, the Debtor's case was far from a simple Chapter 7 proceeding. The complexity of issues, both factual and legal, would require any Chapter 7 trustee to retain competent counsel. Upon review, the Court finds the rates charged by Duane Morris to be reasonable and necessary.

Seven (7) professionals from Duane Morris rendered services on behalf of the trustee. Duane Morris billed 395.50 hours with attorney rates between $465.00 to $1,045.00 per hour. Doc. # 230, Ex. A. Duane Morris's senior counsel, Lawrence J. Kotler, billed 43.94% of his firm's hours at rates between $715.00 to $1,045.00 per hour. Doc. # 230. Mr. Kotler's $715.00 per hour rate was approved at the time of his firm's retention. Doc. # 46. Mr. Kotler's services billed at those rates included the preparation and procurement of the North Mill Settlement, Wilton Settlement, sale of the Debtor's real property and Mercedes-Benz, preference actions, and various other communications essential to the Trustee's administration of this case.[6] See Doc. # 230, Ex. A. Mr. Kotler is board certified by the American Board of Certification in Business Bankruptcy Law and a fellow for the American College of Bankruptcy. Aside from the fees discussed in the subsequent sub-section, Duane Morris at no time billed the estate for duplicate services not likely to benefit the estate or necessary to its administration. See 11 U.S.C. §330(a)(4). In fact, this case was unlikely to have progressed in the fashion it did but-for the proactive approach taken by Duane Morris. See Doc. # 230, Ex. A.

AHR fails to point to a local rule or other legal authority which caps the rate that counsel may charge.[7] Such a practice or rule would impair the Court's ability to use the standards set forth in the statute for reviewing compensation applications. Section 330(a)(3) specifically requires the court to consider the attorney's qualifications as well as the customary compensation charged by attorneys with like qualifications in non-bankruptcy cases when determining the reasonable fee to

---

[6] Duane Morris further negotiated and entered into a stipulation with the Wilton Trustee, AHR, and Wilton in which the Trustee and the Wilton Trustee would abandon claims against Gordon Brothers Commercial & Industrial LLC ("Gordon Brothers") and its affiliates—in addition to separate claims against other third-parties—for fraudulent transfers and related causes of action in favor of AHR. See Bankr. Case No. 16-16779, Doc. # 159; Aug. 22 Transcript at 13-14. Under the agreement, AHR's recoveries against Gordon Brothers, or other parties, are deducted from its claim against the Debtor's and Wilton Estates. See Bankr. Case No. 16-16779, Doc. # 159.

[7] AHR provided this Court with affidavits containing the rates of separate attorneys practicing in this District. See Doc. # 234, Ex. 24, 25. While, these rates were lower than those of Duane Morris, AHR does not contend that those attorneys have performed comparable Trustee work in this District. Aug. 22 Transcript at 25.

be awarded. A cap on the rate charged for representation in bankruptcy would not only ignore this section of the statute but also set a dangerous precedent which may deter competent counsel from taking such cases. This Court will continue to assess a professional's rates under the framework set forth in 11 U.S.C. §330(a).

### F. Preparation of the Application

Turning to Duane Morris's preparation of its Application, fees will only be awarded for services incurred for the benefit of the estate. Baker Botts L.L.P. v. ASARCO LLC, 576 U.S. 121, 135 S. Ct. 2158, 192 L. Ed. 2d 208 (2015); In re Nilhan Devs., LLC, 2021 Bankr. LEXIS 266, at *18 (Bankr. N.D. Ga. Feb. 4, 2021); In re Stanton, 559 B.R. 781, 784-85 (Bankr. M.D. Fla 2016). Accordingly, the Chapter 7 Trustee's counsel may not recover services rendered for their own benefit or that were purely administrative. In this instance, not all of Duane Morris's fees in preparing its Application are inherently compensable. See In re Computer Learning Ctrs., Inc., 285 B.R. 191, 219 (Bankr. E.D. Va. 2002) ("[Not] every aspect of preparing a fee application is compensable.").

The filing of Duane Morris's Application was necessary to the administration of the Debtor's estate and was a service rendered on behalf of the Trustee. See E.g., In re China Fishery Grp. Ltd., 2023 Bankr. LEXIS 207, at *158-59 (Bankr. S.D.N.Y. Jan. 27, 2023) (noting that "[s]ection 330(a)(6) permits recovery of reasonable fees for the preparation of fee applications."). Duane Morris billed 4.50 hours for the preparation of its Application at a rate of $465.00 per hour for a total of $2,092.50. Doc. # 230, Ex. A. Duane Morris's efforts in drafting and filing its Application were reasonable and necessary legal work for the benefit of the estate.

However, Duane Morris also billed 3.50 hours for the review of its billing entries and its more junior counsel's preparation of the Application. Duane Morris charged $1,045.00 per hour

for a total of $3,657.50 for the review of its Application. Reviewing another attorney's time records is purely administrative. Although part of this review included an effort to trim fees which would in turn benefit the estate by reducing Duane Morris's administrative claim, billing said time at the highest billing rate does much to undermine such a benefit.

Accordingly, Duane Morris has failed to meet is burden in showing that the $3,657.50 for the review of its Application was reasonable or necessary. While Duane Morris may have cut other fees in its review, the rate used to bill said time is unreasonable and will therefore be disallowed.

### VII. CONCLUSION

Based upon the foregoing, this Court will allow compensation of $216,776.50 and reimbursement of expenses of $11,267.36 for a total award of $228,043.86 to Duane Morris under its Application. An order will follow.

**Date: November 2, 2023**

*Patricia M. Mayer*

**PATRICIA M. MAYER
U.S. BANKRUPTCY JUDGE**